# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

PAUL COSTANTINO,

                Plaintiff,

    v.

WASHINGTON POST MULTI-OPTION
BENEFITS PLAN,

                Defendant.

Civil Action No. 04-149 (CKK)

## MEMORANDUM OPINION
(August 14, 2005)

Plaintiff brings suit under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et. seq.* ("ERISA"). Plaintiff seeks an Order clarifying his rights as a plan beneficiary to past and future benefits under the terms of an employee welfare plan. Compl. ¶ 2. Specifically, Plaintiff seeks an order declaring that: (1) no deference be granted to the decision of Defendant to terminate benefits; (2) Plaintiff is entitled to long-term disability payments under his long-term disability policy; (3) Plaintiff is entitled to payment of past and future long-term disability benefits; (4) Plaintiff is entitled to payment of pre- and post-judgment interest; and (5) Plaintiff is entitled to payment of attorney's fees and costs. *Id.* at 4.

Pending before the Court are the parties' cross motions for summary judgment and supporting documents. After carefully considering the pleadings, the relevant case law  and the entire record, the Court will grant Defendant's Motion for Summary Judgment and deny Plaintiff's motion.

# I: FACTUAL BACKGROUND

The Court begins its discussion of the facts by noting that this Court strictly adheres to

the text of Local Civil Rule 56.1.  As such, in resolving the present summary judgment motions,

the Court "assumes that facts identified by the moving party in its statement of material facts are

admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition

to the motion."  LCvR 56.1.  Thus, in most instances the Court cites to Defendant's Statement of

Material Facts As To Which There is No Genuine Issue ("Def.'s Stmt.") unless such statement is

contradicted by Plaintiff in her Statement of Genuine Issues ("Pl.'s Stmt.").[1]  The Court also cites

directly to the record, where appropriate, to provide additional information not covered in either

of the parties' statements.  Having set forth these preliminaries, the Court moves to a discussion

of the material facts not genuinely in dispute.

Plaintiff is a former employee of the Washington Post (the "Post").[2]  Pl.'s Stmt. for Pl.'s

---

[1] Because there are cross motions for summary judgment, the Court will refer to the Plaintiff's Statement of Facts He Contends are Not in Genuine Dispute ("Pl.'s Stmt. for Pl.'s Mot.") or Defendant's Response to Plaintiff's Statement of Facts He Contends are Not in Genuine Dispute ("Def.'s Stmt. for Pl.'s Mot.") when referring to statements related to Plaintiff's Motion for Summary Judgment, and to Defendant's Statement of Material Facts as to Which There is No Genuine Dispute("Def.'s Stmt. for Def.'s Mot.") or to Plaintiff's Opposition to Defendant's Statement of Uncontraverted Facts ("Pl.'s Stmt. for Def.'s Mot.") when referring to statements related to Defendant's Motion for Summary Judgment.

[2] Plaintiff was employed in the newspaper division of The Washington Post Company. After the relevant events in this action, The Washington Post Company went through a corporate reorganization and the newspaper division became WP Company LLC, d/b/a, The Washington Post, a subsidiary of The Washington Post Company.  *See* Def.'s Opp'n at 1 fn1.  The Court refers to the Washington Post Company, WP Company LLC, and the named Defendant as the "Post."

Mot. ¶ 1.  He worked in the Post's mailroom for twenty five years, beginning at age 16.[3]  *Id.*  In

July 1995, Plaintiff was injured in a non-work related automobile accident in which he suffered

multiple leg fractures.  *Id*. ¶ 3.  Plaintiff stopped working for the Post in January 2000 and filed

an application for long-term disability benefits under the Washington Post Long-Term Disability

Plan ("LTD Plan").  Def.'s Stmt. for Pl.'s Mot. ¶ 4.

    The Post established the LTD Plan on June 1, 1983 to provide benefits to employees of

the Post and its subsidiaries (collectively referred to as the "Post") who became disabled during

their period of employment.  Def.'s Stmt for Def.'s Mot. ¶ 1.  The LTD Plan is subject to the

provisions of ERISA.  *Id.*  The Post provides several employee welfare plans to its employees.

*Id.* ¶ 2.  These welfare benefit plans are summarized in various summary plan descriptions

("SPDs") that are provided to participants as required by ERISA.  *Id.*  The SPDs typically

describe a benefits program that consists of all the welfare benefits available to a particular group

of employees.  *Id.*  Since 1983, the LTD Plan has been summarized in various SPDs, including

the Multi-Option Benefits Program SPD, effective January 1, 1999 (the "1999 SPD").  *Id.*

    The 1999 SPD granted the Post, as Plan Administrator, discretionary authority to

determine participants' eligibility for benefits and interpret provisions for the LTD Plan.  *Id.* ¶ 3.

The Post delegated this discretionary authority to The Prudential Insurance Company of America

---

[3]Defendant states, and Plaintiff does not dispute, that Plaintiff has gone on to earn his college degree as well as credits towards a master's degree.  *See* Def.'s Mot. at 1; Def.'s Opp. at 1; Def.'s Stmt. for Pl.'s Mot. ¶ 6.  On May 8, 2000, Plaintiff indicated on a Prudential form that he was planning to return to another occupation "after completion of college."  Def.'s Mot. Ex. D (Attach. 1).  Plaintiff stated at his deposition that he was working towards his master's degree in psychology at George Mason University.  Def.'s Mot. Ex. E (Constantino Dep.) at 55.

("Prudential").  *Id.* ¶ 4.[4]

On May, 28, 1998, the Post mailed a letter to all mailroom employees announcing the availability of two new benefit options including an increased payment option for the Accident and Sickness Insurance Plan ("A & S Plan") and the LTD Plan.  *Id.* ¶ 8.  The letter announced a special enrollment period from June 1, 1998 to June 19, 1998, during which eligible employees could enroll in the two new benefit options.  *Id.*  The letter described the LTD Plan, stating that the "LTD [Plan] enables you to receive part of your income while you are totally disabled."  *Id.*  The letter also defined "total disability:"

> For up to two years, total disability means that you are wholly and continuously unable to perform the duties of the job you held when you became disabled.  You must be under the regular care and attendance of a legally qualified physician. You will not be considered totally disabled if you engage in any occupation or perform any work for compensation or profit.  ("own-occupation" standard)

> After two years, you are considered totally disabled if you are unable to engage in any kind of work for which you are, or reasonably could become, qualified by your education, training or experience.  ("any-occupation" standard)

---

[4]Plaintiff claims that this is contradicted by the Affidavit of Ann McDaniel.  Pl.'s Stmt to Def.'s Mot. ¶ 4.  The record shows, however, that the Post has delegated its discretionary authority to determine participants' eligibility for benefits and interpret provisions of the LTD Plan to Prudential.  On June 1, 1983, the Post and Prudential entered into the 1983 Administrative Services Agreement No. 3-39922 ("ASA 39922") that was attached as Exhibit A to the original LTD Plan document.  Def.'s Mot. for Summ. J. Ex. B (McDaniel Aff.) ¶ 6; Def.'s Mot. for Summ. J. Ex. C (Ewing Aff.) ¶ 4.  Under the ASA, Prudential agreed to process claims and to make determinations of participants' eligibility for benefits under the LTD Plan.  Def.'s Mot. for Summ. J. Ex. B (McDaniel Aff.) ¶ 6; Def.'s Mot. for Summ. J. Ex. C (Ewing Aff.) ¶ 4. The affidavits of the Post's Vice President for Human Resources and Prudential's Group Insurance Contracts Director indicate that this was their understanding of the relationship between the Post and Prudential.  Def.'s Mot. for Summ. J. Ex. B (McDaniel Aff.) ¶¶ 5-8; Def.'s Mot. for Summ. J. Ex. C (Ewing Aff.) ¶¶ 4-6.

*Id.*[5]  Attached to the letter was a form entitled "Special 1998 Enrollment Form," which eligible employees could use to select coverage under the LTD Plan and authorize the Post to deduct the necessary contributions from their salary for the coverage.  *Id.*

Plaintiff testified that he did not remember receiving the letter, but there is no dispute that he executed the special 1998 enrollment form on June 4, 1998, and elected coverage under the LTD Plan.  Pl.'s Stmt. for Def.'s Mot. ¶ 9.  Plaintiff's benefits coverage was consolidated in the Multi-Option Benefits Program.  Def.'s Stmt. for Def.'s Mot. ¶ 10.  The Multi-Option Benefits Program offered participation in a number of component plans for certain groups of employees at the Post, including the A & S, LTD, and Business Travel Accident Plans.  *Id.*  The coverages available were described in the 1999 SPD.  *Id.*

The two-part definition of total disability (the own occupation-standard followed after two years by the any-occupation standard) was omitted from the 1999 SPD.  *Id.* ¶ 11.  According to Section Seven, the section of the 1999 SPD entitled "Long Term Disability Plan," the LTD Plan "pays benefits in the form of monthly income payments to covered employees after a defined period of **total disability**." (emphasis in original).  1999 SPD at 7-1; Administrative R.("AR") at 63.  The bold type indicates that the term "total disability" should have been defined in the 1999 SPD's glossary, but it is not there in the context of the LTD Plan.  1999 SPD at 1, 14-1-6; AR at 12, 93-98.  The two-part definition for total disability does, however appear in the original LTD Plan document, and since the LTD Plan's inception in 1983, has been consistently applied to claims for covered employees of the Post under the LTD Plan.  Def.'s Stmt. for Def.'s

---

[5] The Court will refer to this standard (two years at the own-occupation standard followed by two years at the any-occupation standard) as the "two-part" definition of total disability.

Mot. ¶ 11.

The 1999 SPD did include a definition of total disability, but only for purposes of the Business Travel Accident Plan.  *Id.* ¶ 12.  In the 1999 SPD, total disability for the Business Travel Accident Plan was defined under the any-occupation standard.  *Id.*   Plaintiff does not dispute this.  According to the 1999 SPD, medical disability claims used the own-occupation standard.  1999 SPD at 14-5; AR at 97.  Plaintiff argues that in the absence of a definition for total disability in the 1999 SPD, that the definition of "medical disability" which is included in the SPD for the A & S Plan and uses the own-occupation standard, applies to his LTD Plan claim.  Pl.'s Stmt. for Def.'s Mot. ¶ 12; 1999 SPD at 14-5; AR at 97.  This is a legal, not factual dispute, and will be discussed below.

On May 8, 2000, Plaintiff filed a claim for long-term disability benefits under the LTD Plan.  Def.'s Stmt. for Def.'s Mot. ¶ 13.  On July 17, 2000, Prudential denied Plaintiff's claim because he did not satisfy the own-occupation standard.  *Id*. ¶ 14.  In this, and all subsequent correspondence regarding Plaintiff's claim, Prudential recited the LTD Plan's two-part definition of total disability.  *Id.*  Following appeals, Prudential approved Plaintiff's claim on March 19, 2001, retroactive to July 17, 2000.  *Id.* ¶ 15.  On February 4, 2002, Prudential notified Plaintiff of the impending change from the own-occupation to the any-occupation standard which would occur after two years.  *Id.* ¶ 16.

Prudential then requested that Plaintiff complete forms for evaluation of his total disability under the any-occupation standard.  *Id*.  Plaintiff signed the forms on February 26, 2002 and returned them to Prudential.  *Id*.  In a letter dated May 1, 2002, Prudential notified Plaintiff that his benefits would be terminated on July 16, 2002 because he did not satisfy the

any-occupation standard, applicable after the expiration of the initial two years. *Id.* ¶ 17.

Plaintiff appealed that decision in a May 7, 2002 letter. *Id.* ¶ 18. In that letter, Plaintiff did not

challenge Prudential's application of the any-occupation standard to his claim. *Id.* Rather,

Plaintiff contested Prudential's conclusion that he did not satisfy that standard. *Id.* Prudential

denied Plaintiff's appeal. *Id.* Plaintiff responded to this denial with a letter dated August 3,

2002, in which he asserted, for the first time, that the any-occupation standard did not apply to

his claim under the LTD Plan because it was not included in the 1999 SPD. *Id.*

Following subsequent appeals, Prudential issued its final decision in an August 20, 2003

letter in which it affirmed that it had applied, and would apply, the any-occupation standard to

Plaintiff's claim for continuing long-term disability benefits. *Id.* ¶ 19. In that letter, Prudential

provided ASA No. 39922, the agreement between the Post and Prudential effective June 1, 1983.

*Id.* Prudential marked with a yellow tab the definition of disability it was using from the original

LTD Plan. *Id.* That definition uses the two-part definition of total disability, meaning that after

the initial two-year period of disability (in Plaintiff's case, this would have begun on July 17,

2000) the participant must be "unable to engage in any gainful occupation for which he or she is

reasonably suited by training, education, or experience," in order to receive benefits under the

LTD Plan. *Id.* (quoting Def.'s Mot. for Summ. J. Ex. D (Moran Aff.) ¶ 6.).

Because the Post had not provided this definition in the plan documents it had previously

provided to Plaintiff, Prudential extended Plaintiff's benefits through October 2003, an additional

fifteen months beyond the initial twenty-four month period. *Id.* Prudential also reiterated to

Plaintiff that the any-occupation standard would be used to evaluate future eligibility benefits

beyond October 2003. *Id.* In a letter dated November 14, 2003, Plaintiff, through counsel,

informed Prudential that he took the August 20, 2003 letter as a final denial of his claim and

asserted that he was entitled to long-term disability benefits under the own-occupation standard

until he reached age 65. *Id.* ¶ 20. In the same letter, Plaintiff acknowledged that he was not

entitled to any additional long-term disability benefits if the any-occupation standard applied to

his long-term disability claim. *Id.*

## II: LEGAL STANDARD

A party is entitled to summary judgment if the pleadings, depositions, and affidavits

demonstrate that there is no genuine issue of material fact in dispute and that the moving party is

entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Tao v. Freeh*, 27 F.3d 635, 638

(D.C. Cir. 1994). Under the summary judgment standard, Defendant, as the moving party, bears

the "initial responsibility of informing the district court of the basis for [its] motion, and

identifying those portions of the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits which [it] believe[s] demonstrate the absence of a

genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Plaintiff, in

response to Defendant's motion, must "go beyond the pleadings and by [his] own affidavits, or

depositions, answers to interrogatories, and admissions on file, 'designate' specific facts showing

that there is a genuine issue for trial." *Id.* at 324 (internal citations omitted).

Although a court should draw all inferences from the supporting records submitted by the

nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar

summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To be

material, the factual assertion must be capable of affecting the substantive outcome of the

litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a

reasonable trier-of-fact could find for the nonmoving party.  *Laningham v. U.S. Navy*, 813 F.2d

1236, 1242-43 (D.C. Cir. 1987); *Liberty Lobby*, 477 U.S. at 251 (the court must determine

"whether the evidence presents a sufficient disagreement to require submission to a jury or

whether it is so one-sided that one party must prevail as a matter of law"). "If the evidence is

merely colorable, or is not sufficiently probative, summary judgment may be granted." *Liberty*

*Lobby*, 477 U.S. at 249-50 (internal citations omitted).   "Mere allegations or denials in the

adverse party's pleadings are insufficient to defeat an otherwise proper motion for summary

judgment." *Williams v. Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996).  The adverse party must

do more than simply "show that there is some metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, while the

movant bears the initial responsibility of identifying those portions of the record that demonstrate

the absence of a genuine issue of material fact, the burden shifts to the non-movant to "come

forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (citing

Fed. R. Civ. P. 56(e)) (emphasis in original).

### III: DISCUSSION

Plaintiff does not base his claim for continued long-term disability benefits past October

2003 on any definition of total disability found in the 1999 SPD.  Def.'s Stmt. for Def.'s Mot. ¶

21.  Instead, Plaintiff argues that a reasonable reading of the Long Term Disability Plan benefits

(Section 7) and the Glossary of the 1999 SPD entitle him to benefits based on the own-

occupation standard.  Pl.'s Stmt. for Def.'s Mot. ¶ 21.  Plaintiff also does not dispute that for

resolution of these cross motions, the question before the Court is which standard (the any-

occupation, or own-occupation standard) applies to his claim.  *See* Pl.'s Opp'n at 1.  If the own-

occupation standard applies, Plaintiff argues that he is entitled to the relief he seeks, but if the

any-occupation standard applies, Plaintiff acknowledges that he is not entitled to relief. *Id.*[6]  The

Court finds that the any-occupation standard does apply and therefore grants Defendant's motion

for summary judgment and denies Plaintiff's motion for summary judgment.

> A.      *Standard of Review under ERISA*

In considering the denial of benefits under an employee welfare benefit plan governed by

ERISA, courts generally review the decisions of plan administrators *de novo. Firestone Tire &*

*Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  If the plan grants the administrator or fiduciary

discretionary authority to determine eligibility for benefits or to construe the terms of the plan,

however, the Court must apply an abuse-of-discretion standard.  *Id.*  ("Consistent with

established principles of trust law, we hold that a denial of benefits challenged under §

1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the

administrator or fiduciary discretionary authority to determine eligibility for benefits or to

construe the terms of the plan.").  Under the abuse of discretion standard, "[d]ecisions of

administrators made for plans in the latter group . . . are reviewable only for reasonableness."

*Block v. Pitney Bowes, Inc.*, 952 F.2d 1450, 1452 (citing *Bruch*, 489 U.S. at 115).[7]

In determining whether an employee welfare benefits plan confers discretion on a

---

[6] Plaintiff writes that he "does not contend [sic] . . . that he would be ineligible for benefits if the own-occupation standard of disability applied to his claim after the first two years of payments."  Opp'n at 1.  The Court assumes that Plaintiff meant to write contest, rather than contend, which makes sense given the context of his argument.

[7] The abuse of discretion standard of review in ERISA cases is also referred to as the "arbitrary and capricious" standard of review.  *Block*, 952 F.2d at 1454.  In the D.C. Circuit, the distinction between the two standards is "unremarkable" and the reasonableness of the plan administrator's decision is the "polestar" of a court's analysis. *Id.*

fiduciary, courts in the D.C. Circuit look to the plan documents.  *Id.* at 1453-54.

> There are obviously no magic words required to trigger the application of one or
> another standard of judicial review. . . . It . . . need only appear on the face of the
> plan documents that the fiduciary has been [given] the *power* to construe disputed
> or doubtful terms - or to resolve disputes over benefits eligibility - in which case
> the trustee's interpretation will not be disturbed if reasonable.

*Id.*  (quoting *De Nobel v. Vitro Corp.*, 885 F.2d 1180, 1187 (4th Cir. 1989) (internal quotation

marks omitted).  To properly grant discretion under ERISA, the delegation of discretionary

authority must be made by a plan document, it must be express, and it must be to a named

fiduciary or its delegate:

> (1) The instrument under which a plan is maintained may expressly provide for
> procedures (A) for allocating fiduciary responsibilities . . . among named
> fiduciaries, and (B) for named fiduciaries to designate persons other than named
> fiduciaries to carry out fiduciary responsibilities . . . under the plan.

 29 U.S.C. § 1105(c).

    In this case, Plaintiff does not dispute that the 1999 SPD granted the Post, as plan

administrator, discretionary authority to determine a participant's eligibility for benefits and to

interpret provisions of the LTD Plan.  Def.'s Stmt. for Def.'s Mot. ¶ 3.  Indeed, a plain reading of

the 1999 SPD clearly granted discretionary authority to the Post.  1999 SPD at 1-1; AR at 12.[8]

---

[8] "As Plan Administrator, the [Post] has the sole and absolute discretion to:
- Interpret the provisions of the Program,
- Make factual findings with respect to any issue arising under the Program,
- Determine the rights and status under the Program of participants and other persons,
- Decide disputes arising under the Program, and
- Make determinations and findings (including factual findings) with respect to benefits payable and the persons entitled to such benefits under the Program."

1999 SPD at 1-1; AR at 12.  The 1999 SPD also states that "[t]he [Post] has delegated
administrative responsibilities for aspects of component benefit plans to various other parties."
1999 SPD at 1-1; AR at 12.

Similarly, the 1983 LTD Plan contemplates delegation as well.[9]  While it would therefore appear that the abuse of discretion standard applies, Plaintiff argues that, in fact, the abuse of discretion standard does not apply because the 1999 SPD did not provide express procedures for the Post to delegate its discretionary authority to Prudential.  *See* Pl.'s Opp'n at 3-6.

Plaintiff supports his argument with citations to numerous cases, each of which is either distinguishable from the case at bar or does not support Plaintiff's argument.  To begin, Plaintiff has cited a number of cases addressing whether a plan has granted discretion to the plan administrator (in this case the Post) or fiduciary in the first place.  *See Kirwan v. Marriott Corp.*, 10 F.3d 784, 789 (11th Cir. 1994) ("[defendant] may 'control and manage' the Plan, but it must do so in accordance with the terms of the Plan, and there is no grant of authority to construe these terms."); *Sandy v. Reliance Std. Life Ins. Co.*, 222 F.3d 1202, 1205 (9th Cir. 2000) ("Here, unlike other plan provisions we have held conferred discretion, there is no language conferring authority on [the defendant] to determine eligibility, to construe the terms of the Plan, or to make final and binding determinations."); *Cathey v. Dow Chem. Co. Med. Care Program*, 907 F.2d 554, 559 (5th Cir. 1990) (holding that benefit plan did not expressly grant discretion because it did not "expressly confer discretionary authority regarding entitlements upon the fiduciary.").  The Court is puzzled as to why Plaintiff cites these cases, since he has already conceded that the Post was granted this discretionary authority by the 1999 SPD.  Def.'s Stmt. for Def.'s Mot. ¶ 3 (uncontested in Pl.'s Stmt. for Def.'s Mot.)

---

[9]"The Company may retain the services of a person or an administrative organization and designate that person or organization as an Administrator.  The Company may delegate to this person or organization any and all discretionary and non-discretionary duties connected with the day-to-day administration of the Plan."  1983 LTD Plan at VII-2; AR at 527.

Plaintiff claims that the 1999 SPD and accompanying ASAs between the Post and

Prudential did not provide express procedures for the Post to delegate its discretionary authority

to Prudential and that therefore the abuse of discretion standard does not apply.  Pl.'s Opp'n at 3-

6.  Plaintiff's support for this argument rests on two cases from other Circuits that are clearly

distinguishable from this case.  In *McKeehan v. Cigna Life Ins. Co.*, the Eighth Circuit held that

the *de novo* standard of review, rather than abuse of discretion, should be applied to a case

involving denial of benefits under a long-term disability plan.  344 F.3d 789, 791 (8th Cir. 2003).

The court noted in *McKeehan* that it requires "explicit discretion-granting language in the policy

or in other plan documents to trigger the ERISA deferential standard of review," and finding no

such language, it applied the *de novo* standard that Plaintiff seeks here.  *Id*. at 793.  The long-

term disability plan at issue in *McKeehan* expressly granted "'full and exclusive authority to

control and manage the Plan, to administer claims, and to interpret the Plan and resolve all

questions arising in the administration, interpretation, and application of the plan.'" *Id.* at 792.

*"The Plan also provided that the sponsor 'may contract with an independent third party to

administer the Plan and process claims under the Plan.'" *Id.*  The court in *McKeehan* recognized

that this language of the plan, which is similar to the language in the 1983 LTD Plan and the

1999 SPD, was "an express grant of discretion that triggered the deferential abuse-of-discretion

standard of review for benefit decisions by the Plan sponsor." *Id.*

The Eighth Circuit concluded, however, that while the plaintiff's claim was under review,

the employer underwent a change of ownership and sought to replace the delegated third party

administrator which allegedly had the discretionary authority to deny the plaintiff's disability

claim. *Id.*  Because there was no documentation of the agreement between the employer and the

new administrator, the *McKeehan* court held that even though the plan conferred discretion on the plan sponsor to delegate, that new plan administrator had "failed to present evidence that its contractual agreement with the current Plan sponsor included the grant of such discretion." *Id.* at 793. Plaintiff does not argue, and the record does not indicate, that such change in ownership has occurred at the Post. The Eighth Circuit's holding in *McKeehan*, is therefore not applicable to this case.

In *Rodriguez-Abreu v. Chase Manhattan Bank*, the First Circuit applied a *de novo* standard of review to resolve cross motions for summary judgment involving a long term disability plan which provided that "the Named Fiduciaries or their delegates have discretion in interpreting the meaning of Plan provisions and in determining questions of fact." 986 F.2d 580, 584 (1st Cir. 1993). The defendant argued that the plan administrator, who was not a Named Fiduciary, was the delegate of the Named Fiduciary. *Id.* The First Circuit found that the defendant had failed to "point to any plan provisions . . . provid[ing] express procedures for the delegation of the Fiduciary's discretionary authority to a delegate" and that there was "no expression of intent" that the plan administrator act as the delegate of the Named Fiduciaries. *Id.*

In contrast to *Rodriguez-Abreu*, the LTD plan documentation and the subsequent record in this case clearly allow for delegation by the Post and show that the Post did delegate administrative responsibility for the LTD to Prudential. The 1999 SPD states that "[t]he [Post] has delegated administrative responsibilities for aspects of component benefit plans to various other parties." 1999 SPD at 1-1; AR at 12. Effective June 1, 1983, the Post and Prudential entered into the 1983 ASA 39922 that had attached as exhibit A the original LTD Plan. *See* Def.'s Mot. for Summ. J. Ex. B (McDaniel Aff.) ¶ 6; Def.'s Mot. for Summ. J. Ex. C (Ewing

Aff.) ¶ 4.  Under the 1983 ASA, Prudential agreed to process claims and to make determinations

of participants' eligibility for benefits under the LTD plan.  *Id.*  The ASA designated Prudential

as the "'appropriate named fiduciary' of the [LTD] Plan for the purpose of []review and

decision" under the Post's LTD plan.  Def.'s Mot. for Summ. J. Ex. C (Ewing Aff.), Tab 2

(Exhibit B of ASA 39922) at ASO-G1; AR at 543.

It is clear that there has been continuous delegation throughout the life of the LTD plan.

The Post and Prudential entered into another ASA for the LTD plan in 2004.[10]  Def.'s Mot. for

Summ. J. Ex. B (McDaniel Aff.) ¶ 6; Def.'s Mot. for Summ. J. Ex. C (Ewing Aff.) ¶ 5.  Under

that agreement, Prudential was, again, named

> the "appropriate named fiduciary" of the [LTD] Plan for purposes of denial and/or
> review of denied claims under the plan.  In exercising its fiduciary responsibility,
> Prudential will have discretionary authority to determine eligibility for benefits . .
> . ; to determine the amount of benefits for each claim received; and to construe the
> terms of the Plan.

Def.'s Mot. for Summ. J. Ex. B (McDaniel Aff.) ¶ 7; Def.'s Mot. for Summ. J. Ex. C (Ewing

Aff.) ¶ 5.  In their affidavits, Ann McDaniel, the Posts's Vice President of Human Resources, and

Edith Ewing, Director of Prudential's Group Insurance Contract division, affirm that the 2004

ASA "accurately reflect[ed] the Company's understanding of Prudential's responsibilities under

the LTD Plan in its role as the appropriate named fiduciary as of the time it issued its final

decision regarding Paul Costantino's claim for long-term disability benefits."  Def.'s Mot. for

---

[10] The 2004 agreement, which is an amendment to the 1983 LTD plan, is useful to the
extent that Ms. McDaniel and Ms. Ewing use it to illustrate their understanding of the
relationship between the Post and Prudential.  This amendment does not, however, apply to
Plaintiff's claim, because according to the 1983 LTD plan documentation, "no amendment will
affect the right to benefits of any Participant who became disabled before the date of the
amendment."  LTD Plan at 22; AR at 530.  Plaintiff filed his claim in 2000.  Def.'s Stmt. for
Def.'s Mot. ¶ 13.

Summ. J. Ex. B (McDaniel Aff.) ¶ 7; Def.'s Mot. for Summ. J. Ex. C (Ewing Aff.) ¶ 5.

The Court finds that based on the 1983 and 2004 LTD Plans and the 1999 SPD, the content of which is not disputed by Plaintiff, Prudential had the discretionary authority to determine eligibility for benefits and interpret provisions of the LTD Plan when it issued its first denial of Plaintiff's LTD claim (in a letter dated July 16, 2002) because he did not satisfy the any-occupation standard.  Def.'s Stmt. for Def.'s Mot. ¶ 17.  Because the SPD granted the Post discretionary authority to determine participants' eligibility for benefits and interpret provisions of the LTD Plan (which the Post delegated to Prudential), the Court must apply the abuse of discretion standard to a review of Prudential's decision to terminate Plaintiff's benefits under the LTD Plan.

   B.   *Prudential's Decision*

Having determined that the abuse of discretion standard applies, the Court now moves to the question of whether Prudential abused its discretion when it applied the any-occupation standard to Plaintiff's LTD claim.[11]

In applying the abuse of discretion standard, courts in the D.C. Circuit have followed the

---

[11] Before embarking on this analysis, the Court notes that this would not be an issue save for Prudential's inexplicable failure to define "Long Term Disability" in the 1999 SPD. Defendant argues that if Plaintiff were to prevail he would be entitled to unjustified disability payments that would make the administration of long-term disability plans impossible.  *See* Def.'s Reply at 9.  Defendant writes convincingly of Prudential's need to preserve "the assets [of the LTD Plan] for future participants and beneficiaries."  Def.'s Motion for Summ. J. at 26.  If this is the goal, it would behoove Defendant and Prudential to publish materials that are sufficiently clear.  It is regrettable that Defendant's concern about the costs and difficulties of administering insurance plans once they have reached this stage of litigation was absent when there was an opportunity for the diligent publication of plan materials that would have obviated the need for litigation in the first place.

four-factor test introduced by Chief Judge Thomas Hogan in *Donovan v. Carlough*, 576 F. Supp.

245, 249 (D.D.C. 1983), *aff'd*, 753 F.2d 166 (D.C. Cir. 1985); *see aslo Germany v. Operating*

*Eng'rs Trust Fund of Washington, D.C.*, 789 F. Supp. 1165, 1167-68 (D.D.C. 1992) (applying

the four *Carlough* factors); *Ret. and Sec. Program for Employees of Nat'l Rural Coop. Assoc. v.*

*Oglethorpe Power*, 712 F. Supp. 226, 227 (D.D.C. 1989) (finding the *Carlough* factors

consistent with the Supreme Court's holding in *Bruch*, 489 U.S. 101); *Foltz v. U.S. News &*

*World Report*, 663 F. Supp. 1494, 1514 (D.D.C. 1987) (applying the four *Carlough* factors).  In

applying those factors to this case, the Court must consider whether:  (1) Prudential's

interpretation is contrary to the language of the LTD plan; (2) whether it is consistent with the

LTD Plan's purposes; (3) whether it is consistent with the specific purpose of determining

eligibility for the long-term total disability benefit; and (4) whether it is consistent with prior

interpretations by Prudential and whether Plaintiff had notice of Prudential's interpretation.  *Id.*

The Court notes that the "application of these factors is not formulaic . . . and that the

weight given to each will vary according to the context of the case."  *Germany*, 789 F. Supp. at

1168.

    1.    <u>Prudential's Interpretation is Not Contrary to the Language of the LTD</u>
<u>Plan</u>

"Total disability" appears in bold type in Section 7 of the 1999 SPD that summarizes the

LTD plan.  1999 SPD at 7-1; AR at 63.  The bold type indicates that the term is to be defined in

the Glossary.  1999 SPD at 1; AR at 12.  However, as noted *supra*, it was not defined in the

context of the LTD Plan.  1999 SPD at 14-1-6; AR at 93-98.  The only definition of "total

disability" in the 1999 SPD can be found under a glossary definition applicable to the Business

Travel Accident Plan, which uses the any-occupation standard.  1999 SPD at 9-1, AR at 74, 98.

Plaintiff argues that the SPD conflicts with the LTD Plan documents, that as a result, the SPD

language should control, and that this means the definition of total disability should be based on

the definition of "medical disability" for the A&S Plan that Plaintiff believes was the "closest"

definition.  Pl.'s Opp'n at 8.  As Plaintiff notes, however, his argument is based on the premise

that there is a conflict between the SPD and the underlying plan documents.  Opp'n at 7.  The

Court finds that this assumption is wrong.  The definition of total disability for the LTD Plan was

not provided in the 1999 SPD.  There is no conflict, but rather an omission.

In the correspondence between Plaintiff and Prudential after Plaintiff's initial claim and

during subsequent appeals Prudential was clear that the two-part definition for total disability

applied.  Significantly, Prudential applied the two-part definition before Plaintiff had informed

Prudential that he believed he was entitled to long-term disability benefits under the own-

occupation, rather than two-part, standard, which he did not do until August, 2002.  Def.'s Stmt.

for Def.'s Mot. ¶ 20.  Prudential's position is consistent with the LTD Plan as described in the

1983 ASA, and has been applied consistently to other claims under the LTD Plan.  Def.'s Stmt.

for Def.'s Mot. ¶ 11.  Indeed, the only place in which the definition does not appear is in the

1999 SPD.  But that document contains no other definition for total disability under the LTD

Plan and nothing suggests that Prudential intended to introduce another definition for total

disability in that document.  Plaintiff has not shown that Prudential's definition is contradicted

either by the SPD or any other LTD Plan documents, only that it was omitted from the 1999

SPD.  The Court therefore finds that Prudential's definition was consistent with the LTD Plan

when taken as a whole.

2.      Prudential's Interpretation is Consistent With the Purposes of the LTD
        Plan

The purpose of the LTD plan is to provide benefits to participants who "become disabled

from an illness or injury during their period of employment.  1983 LTD Plan at 1; AR at 509.

The A & S Plan (whose definition of medical disability Plaintiff seeks to apply to his LTD Plan

claim) on the other hand is designed to pay benefits to plan participants who "are unable to work

due to a non work-related temporary medical disability."  1999 SPD at 6-1; AR at 61.  If a plan

participant becomes injured or sick to the point that he cannot perform his job, he is entitled to

benefits under the A & S Plan, even if he could still work elsewhere.  A & S Plan benefits are

therefore limited to twenty-six weeks, *id.*, and are based on the own-occupation standard.  1999

SPD at 6-1, 14-4-5; AR at 61, 96-7.

The Court finds that, when compared with the A & S Plan and its definition for medical

disability, Prudential's interpretation of total disability is consistent with the goals of the LTD

plan.  The two-part total disability definition provides two years of assistance for plan

participants who meet the own-occupation standard, but then moves to the more rigorous any-

occupation standard.  This provides benefits to disabled plan participants while encouraging

them to re-enter the work force after two years.  This is in sharp contrast to the A & S Plan,

which applies only the own-occupation standard because it is designed to help plan participants

deal with temporary medical disabilities and only provides participants with benefits for half a

year.  It is consistent with the goals of these two plans for the LTD Plan to have a two-part

definition for total disability.  Without this definition, disabled plan participants would have no

incentive to learn a new occupation or to use their benefits with the aim of reentering the work

force.

3.      Prudential's Interpretation is Consistent With the Specific Purpose of
        Determining Eligibility for the Total Disability Benefit

There are two purposes to a long-term disability plan.  The first is to provide benefits to

participants who become totally disabled during their employment.  The second is to maintain the

assets of the insurance provider so that funds remain for future plan participants and claimants.

*See, e.g.*, *Germany*, 789 F. Supp. at 1170 ("The purpose of the plan, obviously, is to provide

health benefits to all present eligible claimants while preserving the pool of Fund assets for future

plan participants and beneficiaries.").  Thus, as this case so clearly illustrates, an insurance

provider must balance the benefits that it pays out against its job of preserving assets for potential

future claims.  Prudential has a dual obligation to provide for plan participants and beneficiaries

under the LTD Plan and to preserve the LTD Plan's assets for future participants and

beneficiaries.  The abuse of discretion standard that the Court applies allows plan fiduciaries the

discretion to "balance competing interests of present and future claimants while maximizing

assets to the aggregate advantage of all beneficiaries."  *Oglethorpe Power*, 712 F. Supp. at 228

(citing *Fink v. Nat'l Sav. and Trust Co.*, 772 F.2d 951, 955-56 (D.C. Cir. 1985)).

The Court finds that Prudential's application of the two-part definition of total disability

is consistent with this purpose.  Application of the own-occupation standard that Plaintiff urges

the Court to adopt would undermine the purpose of the LTD Plan by greatly relaxing the

standards under which Prudential disburses benefits under the LTD Plan.  The standard that

Plaintiff seeks is taken from the definition of medical disability under the A & S Plan, a different

benefit plan, with different goals.  *See supra* § II.B; 1999 SPD at 6-1; AR at 61.  The A & S Plan

employs a broader definition because it provides benefits for a shorter amount of time.  Nothing

in the record suggests that Prudential ever intended that definition to apply to the LTD plan or

that Plaintiff's definition applies to anything other than the medical disabilities covered by the A

& S plan.  The payments that Plaintiff seeks based on his broader definition would necessarily

deplete the resources of the fund used to make payments under the LTD Plan and is not

consistent with the dual purpose of the LTD plan.

       4.      Prudential's Interpretation is Consistent with Prior Interpretations by
Prudential and Plaintiff had Notice of Prudential's Interpretation

The May 28, 1998 letter to Plaintiff announcing the availability of the LTD Plan defined

total disability using the two-part definition.  Def.'s Stmt for Def.'s Mot. ¶ 8.  Although Plaintiff

does not remember receiving that letter, it is undisputed that the letter was mailed to Plaintiff,

that Plaintiff signed a "1998 Special Enrollment Form" (which was attached to the letters mailed

to Plaintiff and his mailroom colleagues), and that Plaintiff completed the enrollment form and

elected coverage under the LTD Plan.  The Court therefore concludes that Plaintiff had notice of

Prudential's definition of total disability.

Most damaging to Plaintiff's case is that he accepted Prudential's definition until it

became inconvenient for him.  Plaintiff filed his claim on May 8, 2000.  Prudential denied

Plaintiff's claim on July 17, 2000, because he did not meet the own-occupation standard (the

initial part of the two-part standard).  In that denial and subsequent communications, Prudential

recited the LTD Plan's two-part definition of total disability.  Def.'s Stmt. for Def.'s Mot. ¶ 14.

Plaintiff and Prudential corresponded on numerous occasions and through subsequent appeals,

and Plaintiff does not dispute that Prudential consistently reaffirmed the two-part definition of

disability. *Id.* It was not until August 3, 2002 that Plaintiff claimed he was entitled to long-term disability benefits under the own-occupation, rather than the two-part, standard. Def.'s Stmt. for Def.'s Mot. ¶ 18.

Based on the undisputed facts, there is no question that, the omission of the definition for long term disability in the 1999 SPD notwithstanding, that Plaintiff had notice of the definition that Prudential applied to his claim. Moreover, Plaintiff does not contest that the two-part definition appears in the original LTD Plan document, and has been consistently applied to claims for covered employees of the Post under the LTD since 1983. Plaintiff therefore concedes that Prudential's definition is consistent with prior interpretations of claims under the Post's LTD Plan.

## IV: CONCLUSION

After carefully considering the pleadings, the relevant case law and the entire record, the Court finds that Defendant's decision to apply the two-part definition of total disability was not an abuse of discretion. The Court shall grant Defendant's Motion for Summary Judgment and deny Plaintiff's motion. An appropriate Order accompanies this Memorandum Opinion.

Date:   August 14, 2005

_/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge